29 C.C.P.A. (Patents)

## In re MIGRDICHIAN.

### Patent Appeal No. 4636.

Court of Customs and Patent Appeals.
June 15, 1942.

Ellis S. Middleton, of New York City, for appellant.

W. W. Cochran of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting all the claims, numbered 1 to 13, inclusive, of appellant's application which, as stated in the brief on behalf of appellant, relates "to a method of preparing cyanuric chloride by polymerizing cyanogen chloride."

While the claims differ in phraseology, there is no contention that the differences require their separate consideration but, first quoting claim 1, we reproduce the analysis of all of them made by the examiner. Claim 1 reads: "1. A method of preparing cyanuric chloride which comprises the polymerization of cyanogen chloride in a closed vessel in the presence of an inert diluent and a mineral acid catalyst soluble in said diluent, in which the proportion of diluent to cyanogen chloride is greater than 2:1."

The examiner's analysis reads:

"Claim 1 calls for polymerizing cyanogen chloride in a closed vessel with a mineral and catalyst and a diluent in a ratio of more than 2 parts of diluent to one of cyanogen chloride.

"Claim 2 limits claim 1 by specifying gaseous HCI as the catalyst.

"Claims 4 and 5 limit claim 1 by specifying reaction temperatures of 45°C. and 43 to 48°C., respectively.

"Claim 6 limits claim 1 to carbon tetrachloride as the diluent.

"Claim 7 specifies that 5% of the weight of the charge of HCI is the catalyst in claim 1.

"Claim 8 specifies that 8% of the total charge is the initial proportion of cyanogen chloride in claim 1.

"Claim 9 adds to claim 8 the limitation that the rest of the charge is principally carbon tetrachloride.

"Claim 10 requires the quantity of diluent in claim 1 to be sufficient to absorb the exothermic heat of reaction.

"Claim 13 requires the reactants of claim 1 to be substantially anhydrous.

"Claim 3 calls for polymerizing cyanogen chloride in a closed vessel with a mineral acid catalyst in a diluent of the group benzene, toluene, ethylene dichloride, and carbon tetrachloride.

"Claim 11 calls for adding cyanogen chloride to a closed vessel containing an

inert diluent and catalyst at a rate equal to that at which the cyanogen chloride polymerizes, while claim 12 specifies this rate as 8% of the charge per hour."

All the claims were rejected as being unpatentable over prior art, and all except claims Nos. 2 and 7 were rejected upon the additional ground that they are broader than appellant's statement of his invention.

The following references (in the order of their arrangement in the decision of the board) were cited:

Wittwer, 1,976,678, October 9, 1934;

Bloxam (Br.), 466,957, June 9, 1937;

Berg et al., 2,146,282, February 7, 1939;

"Chemistry of Synthetic Resins", Ellis, 1926, Vol. 1, Pages 109, 116 and 188.

"Systematic Organic Chemistry", Cummings et al., 1926, pages 208, 209 and 265;

"Berichte", 28, page 2472.

Broadly, as stated by the examiner, "The application deals with refinements in the preparation of cyanuric chloride, (2, 4, 6-trichloro triazine) by polymerizing cyanogen chloride in the presence of a catalyst, eg., HCl."

The case was submitted to us, so far as appellant was concerned, upon the record and brief filed on his behalf, no one appearing for him in oral argument.

In the brief it is stated, in substance, that the "Berichte" reference contained the same text as that referred to in appellant's specification as "Nef (Liebig's Annalen de Chemie * * *)," and the specification recites:

"It is well known that cyanuric chloride forms by the polymerization of cyanogen chloride in the presence of hydrochloric acid. Thus, whenever appreciable quantities of hydrochloric acid are present in liquid cyanogen chloride, due, for example, to insufficient purification, the liquid polymerizes on standing. The polymerization is a self-accelerating process, due to the rise in temperature caused by the reaction.

"Nef (Liebig's Annalen de Chemie, 287, 310) prepared cyanuric chloride by placing 25 cc. of liquid cyanogen chloride and 5 cc. of ether saturated with hydrochloric acid at 0°C. in a sealed tube and allowing the mixture to warm up to room temperature. The reaction was complete overnight."

So, it appears to be conceded that the fundamental features of the process used by appellant in the preparation of cyanuric chloride were known to the art and that the process had been used in preparing the substance in small quantities. The specification of the application states, in substance, that when appellant sought to produce it in large quantities the "reaction proceeded violently, resulting in an explosion." The gist of appellant's findings and activities is stated by the examiner as follows: "Applicant finds that when this reaction is attempted on a large scale the evolution of heat and the resulting pressure is so great as to cause explosions unless extremely strong pressure resisting vessels are used. To obviate the necessity for such strong vessels he proposes the use of an inert diluent in sufficient quantities to absorb enough of the exothermic heat so that the velocity of the reaction and the gas pressure resulting from such heat is kept at reasonable levels. He further proposes, since cyanogen chloride is a gas and in unreacted form causes additional pressure when heated, to add the cyanogen chloride to the reaction zone only as fast as it polymerizes, thus minimizing the excess pressure caused by unreacted cyanogen chloride in the reaction zone."

The examiner's view was stated in part as follows: "It is considered that the claims set forth nothing more than the obvious steps which would be taken by one skilled in the art on finding that a known exothermic reaction when practiced on a large scale produced so much heat as to cause an unduly violent reaction and high gas pressures. It is believed that the use of an inert diluent to absorb excess heat generated in the reaction would be an expedient immediately obvious to a skilled chemist without the exercise of invention."

The teachings of various of the other references were then set forth. We deem it unnecessary to lengthen this opinion by repeating those teachings here.

The board said, inter alia:

"* * * The details given in [all] these claims would soon be arrived at by any chemist.

"There is nothing critical about the specific diluent so that it is a mere matter of choice. Applicant actually in his specific example used ether as does "Berichte", but in order to avoid the prior art, he claims (claim 6) the use of carbon tetrachloride. This solvent has no critical relation to the process nor is any such relation alleged."

The board also approved the examiner's rejection of claims 1, 3 to 6, inclusive, and 8

to 13, inclusive, as being too broad in their statement of the catalyst.

The brief on behalf of appellant has received our careful study. The art involved is of a highly technical character and it is obvious that the claims received thorough consideration by the experts in the Patent Office. Appellant has not presented any facts or arguments which would justify a holding that the decision appealed from was erroneous. Upon the contrary, we are convinced that no invention was involved in what appellant did. This ground applies to all the claims and, since it is decisive of the case, it is unnecessary for us specifically to pass upon the issue respecting the breadth of the claims.

The decision of the board is affirmed.

Affirmed.